UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LEWIS BELL, SR.,

                                  Plaintiff,

                                                      9:10-CV-1577
v.                                                     (LEK/GHL)

DR. GALANI, J. THOMAS, J. WALDRON,
OFFICE OF MENTAL HEALTH,
PAUL DAUGHERTY, JASON BEAN,
LYDIA BRENNAN, JOHN DOE,
DONALD SAWYER,

                                   Defendants.
_____

APPEARANCES:                                OF COUNSEL:

LEWIS BELL, SR., 09-B-3809
Plaintiff *pro se*
Sullivan Correctional Facility
Box 116
Fallsburg, NY 12733

HON. ERIC T. SCHNEIDERMAN             RICHARD LOMBARDO, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

     This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn,

Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff Lewis Bell, Sr., alleges that Defendants violated his rights by substantially changing his

regimen of psychiatric medications.  (Dkt. No. 31.)  Currently pending before the Court are: (1)

Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil

Procedure 12(b)(6) (Dkt. No. 47); (2) Plaintiff's motion for summary judgment (Dkt. No. 58); (3)

Defendants' motion to strike Plaintiff's motion for summary judgment (Dkt. No. 60); and (4)

Plaintiff's requests to withdraw his motion for summary judgment and for appointment of

counsel (Dkt. Nos. 62-63).

## I.    BACKGROUND

### A.    Allegations of the Operative Complaint

The second amended complaint (the "operative complaint") alleges that Plaintiff began

psychiatric treatment for post traumatic stress disorder, mood disorder, and major depression

with psychotic episode disorder on March 8, 2005, at St. Mary's Mental Health Psychiatric

Center in Rochester, New York.  (Dkt. No. 31 at 6-7.)  Plaintiff was treated with psychiatric and

psychotropic medications and therapy in which a baseline medication regimen was established

that minimized his negative symptomology.  *Id*. at 7.  This regimen included five different drugs:

Seroquel[1], Trazodone[2], Lithium[3], Abilify[4], and Zoloft[5].  *Id*.  Plaintiff's drugs and dosages

---

[1]      Seroquel is prescribed for the treatment of schizophrenia and is also used for the short-term treatment of mania associated with bipolar disorder.  *The PDR Pocket Guide to Prescription Drugs* 1303 (Bette LaGow, ed., 7th ed. 2005).

[2]      Trazodone is used to treat depression.  United States National Library of Medicine, http://www.ncbi.nlm.nih.gov/pubmedhealth (last visited Feb. 6, 2012).

[3]      Lithium is used to treat and prevent episodes of mania in people with bipolar disorder.  United States National Library of Medicine, http://www.ncbi.nlm.nih.gov/pubmedhealth (last visited Feb. 6, 2012).

[4]      Abilify is used in the treatment of schizophrenia and to help control the manic phase of bipolar disorder.  *The PDR Pocket Guide to Prescription Drugs* 1 (Bette LaGow, ed.,

remained consistent through August 20, 2008.  *Id*.  During 2008, Plaintiff was declared mentally disabled by the Social Security Administration.  *Id*. at 7-8.

On August 20, 2008, Plaintiff was arrested and incarcerated at the Monroe County Jail. *Id*. at 8.  At the jail, Plaintiff's drug regimen continued without change.  *Id*.

In the fall of 2009, Plaintiff was convicted and sentenced to a term of incarceration in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"). *Id*.  He was transferred to Wende Correctional Facility.  *Id*.  Immediately upon his arrival, his medication regimen was changed.  *Id*. at 8-9.  Specifically, Seroquel was stopped entirely and Zyprexa[6] was added.  Plaintiff complained to mental health staff, none of whom are named as defendants in this action, that he was suffering adverse effects from the change.  *Id*. at 9.  These adverse effects included insomnia, night terrors, and night sweats.  *Id*.

On or about December 20, 2009, Plaintiff was transferred to Elmira Correctional Facility. *Id*.  Immediately upon his arrival, his medication regimen was further modified.  *Id*. at 9-10. Specifically, Plaintiff stopped receiving Lithium.  *Id*. at 10.  Plaintiff's condition deteriorated.  *Id*. On December 31, 2009, he reported to unnamed Office of Mental Health ("OMH") staff that his auditory hallucinations had increased.  *Id*.  On January 16, 2010, he "advised OHM staff" that voices were telling him to hurt himself and others.  *Id*.

---

7th ed. 2005).

[5]      Zoloft is prescribed for major depression.  *The PDR Pocket Guide to Prescription Drugs* 1646 (Bette LaGow, ed., 7th ed. 2005).

[6]      Zyprexa helps manage symptoms of schizophrenia, the manic phase of bipolar disorder, and other psychotic disorders.  *The PDR Pocket Guide to Prescription Drugs* 1670 (Bette LaGow, ed., 7th ed. 2005).

Plaintiff requested mental health services and was seen by Defendant Lydia Brennan.  *Id.*
Plaintiff told Defendant Brennan about his deteriorating condition, explained the changes that
had been made in his medication regimen, and asked that he be returned to the regimen he had
received before his transfer into DOCCS custody.  *Id.* at 10-11.  Defendant Brennan did nothing.
*Id.* at 11.

Over the next four months, Plaintiff was seen by Defendants Brennan, Jason Bean, and
Paul Daugherty.  *Id.*  Plaintiff "attempted to impress on them the severity of his negative
sym[p]tomology since the modifications by OMH of his medications."  *Id.*  He told them that he
had a tendency toward self-harm when not properly medicated and that his auditory
hallucinations had been growing worse since the changes in his medication regimen.  *Id.*  These
reports were placed in his mental health file on December 31, 2009; February 17, 2010; and
March 15, 2010.  *Id.*

On or about March 8, 2010, Plaintiff was transferred to Clinton Correctional Facility,
where his medication regimen was again modified.  *Id.* at 12.  Specifically, his Zyprexa was
discontinued.  *Id.*  Within days, Plaintiff began to complain "to the Office of Mental Health staff
that he was becoming more and more unstable" and that "he was hearing voices more vividly and
his depression was more" severe.  *Id.*  This was recorded on April 13, 2010.  *Id.*

On April 23, 2010, Plaintiff was interviewed by Defendant Jesse Thomas.  *Id.*  Plaintiff
gave Defendant Thomas his medical history, including his propensity toward self harm when not
properly medicated.  *Id.*

On May 1, 2010, Plaintiff was interviewed by Defendant Dr. Sohail Gillani.[7]  *Id*. at 13.

Plaintiff told Defendant Gillani that his condition was deteriorating and that he had self-harm

issues when not properly medicated.  *Id*.

Between May 1, 2010, and June 3, 2010, more of Plaintiff's medications were

discontinued.  *Id*.  By June 3, 2010, Plaintiff was receiving only Zoloft.  *Id*.  The dosage that

Plaintiff received of Zoloft was more than twice the dosage that he had been prescribed in 2005.

*Id*.

On June 26, 2010, Plaintiff attempted to commit suicide by cutting his left forearm

twenty-seven times.  *Id*.  "Plaintiff was then taken to the on[-site] hospital and after receiving

inadequate care [and] treatment of his lacerations he was placed for [three] days in a strip cell for

observation."  *Id*. at 13-14.  Defendant Gillani did not see Plaintiff for three days.  *Id*. at 14.

"Only after Plaintiff agreed Dr. Gillani placed Plaintiff on 500 mgs Depicote and 15 mgs

Remeron to start after two weeks."  *Id*.

The operative complaint purports to assert seven causes of action.  *Id*. at 15-29.  Liberally

construing the operative complaint, it appears to assert two causes of action.  First, Plaintiff

asserts an Eighth Amendment claim against Defendants Gillani, Thomas, J. Waldron, Daugherty,

Bean, Brennan, John Doe[8], and Donald Sawyer on two different theories: (1) that their changes to

---

[7]        This defendant is named in the operative complaint as "Dr. Galani."  The Clerk is
directed to change the caption to reflect the correct spelling.

[8]        Plaintiff had not yet identified the Doe Defendant.  I caution Plaintiff that he must
move quickly to identify and serve John Doe.  Under the Federal Rules of Civil Procedure, a
defendant must be served with the summons and complaint within ***120 days*** after the filing of the
complaint.  Fed. R. Civ. P. 4(m).  This 120-day service period is shortened, or "expedited," by
the Court's Local Rules of Practice (and the Court's General Order 25), which provide that all
defendants must be served with the summons and complaint within ***sixty (60) days*** of the filing

his medication and failure to respond to his reports about his deteriorating condition constituted deliberate indifference to his serious medical needs; and (2) that they failed to protect him from self-harm.  Second, Plaintiff asserts a disability discrimination claim against Defendants Gillani, Thomas, Waldron, Daugherty, Bean, Brennan, John Doe, and Sawyer.  Plaintiff requests an injunction directing Defendants to return him to his original medication regimen, compensatory damages, punitive damages, fees, and costs.  *Id*. at 30-31.

      **B.**    **Procedural History**

      Plaintiff filed his original complaint in the Western District of New York on December 2, 2010.  (Dkt. No. 1.)  He filed an amended complaint in the Western District of New York on December 8, 2010.  (Dkt. No. 3.)  The case was then transferred to this District.  (Dkt. No. 4.)  On January 12, 2011, the Court received a letter from Plaintiff requesting permission to move for summary judgment.  (Dkt. No. 6.)  The Court denied that request, noting that "before defendants have been served with process and have responded in opposition to the amended complaint, such a motion is premature."  (Dkt. No. 9 at 3.)  The Court stated that Plaintiff could move for summary judgment "after defendants have been served and issue has been joined."  *Id*.

      On March 11, 2011, and March 30, 2011, the court received letters from Plaintiff in which he asked whether he could file a motion for summary judgment.  (Dkt. Nos. 25 and 29.)  The Court denied those requests, stating that "a motion for summary judgment may properly be filed at the close of discovery" and warning Plaintiff "that the future filing of premature summary

---

of the complaint.  N.D.N.Y. L.R. 4.1(b).  Plaintiff filed his second amended complaint asserting allegations against John Doe on April 8, 2011.  (Dkt. No. 31.)  Accordingly, both of the sixty-day and the 120-day deadlines have expired here.  Therefore, I order Plaintiff to identify and serve John Doe within sixty days of the date of any order adopting this Report-Recommendation.

judgment motions may result in the imposition of sanctions." (Dkt. No. 30.)

Plaintiff filed the operative complaint on April 8, 2011. (Dkt. No. 31.)

Defendants now move to dismiss the operative complaint. (Dkt. No. 47.) Plaintiff was granted two extensions of time in which to respond to the motion. (Aug. 3, 2011, and Oct. 24, 2011, Text Orders.) Plaintiff did not oppose the motion with the time granted by those extensions. Instead, two months after the deadline in which to respond to the motion, Plaintiff filed a motion for summary judgment. (Dkt. No. 58.) Defendants request that the motion be stricken from the record. (Dkt. No. 60.) On January 25, 2012, the Court stayed Defendants' obligation to respond to the motion for summary judgment pending further order of the Court. (Jan. 25, 2012, Text Order.) On January 30, 2012, Plaintiff filed two letter requests, in which he asked the Court to appoint counsel and allow him to withdraw his motion for summary judgment. (Dkt. Nos. 62-63.) On February 8, 2012, Plaintiff filed a document titled "Facts of the Case," which the Court construes as an untimely opposition to the motion to dismiss. (Dkt. No. 64.)

## II.     LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief."  *Id.* at 1950 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  Courts are "obligated to construe a *pro se* complaint liberally."  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949.

## III.   MOTION TO DISMISS

Defendants argue that the Court should dismiss the second amended complaint because (1) Plaintiff has not alleged personal involvement by Defendants Waldron or Sawyer; (2) the complaint fails to state an Eighth Amendment claim; (3) Defendants Gillani, Thomas, Waldron, Daugherty, Bean, Brennan, and Sawyer are entitled to qualified immunity; (4) Plaintiff's claims for money damages against the Office of Mental Health are barred by the Eleventh Amendment; (5) the Americans with Disabilities Act ("ADA") does not provide for suits against individual state officials; and (6) the second amended complaint fails to state an ADA claim.  (Dkt. No. 47-

1.)  For the reasons discussed below, I recommend that Defendants' motion be denied in part and

granted in part.

### A.      Personal Involvement

Defendants argue that Plaintiff's claims against Defendants Waldron and Sawyer should

be dismissed for lack of personal involvement.  (Dkt. No. 47-1 at 8-9.)  Defendants are correct.

Under Second Circuit precedent, "'personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v.*

*Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885

(2d Cir. 1991)).  In order to prevail on a § 1983 cause of action against an individual, a plaintiff

must show some tangible connection between the unlawful conduct and the defendant.  *Bass v.*

*Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  If the defendant is a supervisory official, a mere

"linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the

doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that

unlawful conduct.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347

F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d

Cir. 1985).  In other words, supervisory officials may not be held liable merely because they held

a position of authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).  Rather, supervisory

personnel may be considered "personally involved" if they (1) directly participated in the

violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3)

created, or allowed to continue, a policy or custom under which the violation occurred, (4) had

been grossly negligent in managing subordinates who caused the violation, or (5) exhibited

deliberate indifference to the rights of inmates by failing to act on information indicating that the

violation was occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[9]

Plaintiff alleges that Defendant Waldron is the unit chief employed by OMH at Clinton

Correctional Facility.[10]  (Dkt. No. 31 at 4.)  Other than that, Plaintiff alleges no facts about

Defendant Waldron at all.  Similarly, Plaintiff alleges that Defendant Sawyer is the Director of

the OMH but alleges no further facts.  (Dkt. No. 31 at 5.)  These Defendants are mentioned only

in the list of parties and then in the counts at the end of the complaint.  Thus, Plaintiff has not

alleged any facts plausibly suggesting that either Defendant Waldron or Defendant Sawyer was

personally involved in any constitutional violation.  Therefore, I recommend that the Court grant

Defendants' motion to dismiss the claims against Defendants Waldron and Sawyer.

Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not

dismiss without granting leave to amend at least once when a liberal reading of the complaint

gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112

(2d Cir. 2000) (internal quotation and citation omitted).  Of course, an opportunity to amend is

not required where the plaintiff has already amended the complaint.  *See Advanced Marine Tech.*

*v. Burnham Sec ., Inc.*, 16 F. Supp. 2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where

plaintiff had already amended complaint once).  In addition, an opportunity to amend is not

---

[9]       In *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009), the Supreme
Court ruled that where the underlying constitutional claim is a claim of intentional
discrimination, a supervisory official's liability must be judged by the official's purpose rather
than the official's knowledge of subordinates' actions or policies.  The Second Circuit has not yet
issued a decision discussing *Iqbal*'s effect on the *Colon* categories.  Several district courts in the
Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories.  *See Sash v.
United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases).  I will assume for
the purposes of this motion that *Colon* remains good law.

[10]      Plaintiff refers to the facility as "CCF Danamora."  (Dkt. No. 31 at 4.)

10

required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted). Here, Plaintiff could conceivably amend the complaint to allege facts plausibly suggesting personal involvement. Although Plaintiff has already amended his complaint twice, he has done so without the benefit of any guidance from the Court or Defendants regarding the issue of personal involvement. Therefore, in light of the special solicitude that the Court is obligated to grant to *pro se* civil rights plaintiffs, I recommend that Plaintiff be granted leave to amend his claims against Defendants Waldron and Sawyer.

### B.     Eighth Amendment

Plaintiff claims that Defendants Gillani, Thomas, Waldron, Daugherty, Bean, Brennan, and Sawyer violated his rights under the Eighth Amendment. (Dkt. No. 31 at 15-20.) Defendants argue that this claims should be dismissed because Plaintiff has not alleged facts plausibly suggesting that any defendant acted with deliberate indifference to Plaintiff's serious medical needs. (Dkt. No. 47-1 at 7-8.)

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle*, 429 U.S. at 102. Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In fulfilling this duty, prison

11

officials must ensure, among other things, that inmates receive adequate medical care.  *Farmer*, 511 U.S. at 832 (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

There are two elements to a prisoner's claim that prison officials violated his Eighth Amendment right to receive medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted).  "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind."  *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted), *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain.  *Chance*, 143 F.3d at 702-03.

Here, Defendants do not argue that Plaintiff's medical condition was not serious.  (Dkt. No. 47-1 at 7-8.[11])  Although there are no published cases on the topic in the Second Circuit, the

---

[11]      Citations to page numbers in Defendants' memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

First Circuit has held that depression combined with anxiety attacks or suicide attempts is a

serious medical need.  *Mahan v. Plymouth Cnty. House of Corr.*, 64 F.3d 14, 16, 18 (1st Cir.

1995); *Torraco v. Maloney*, 923 F.2d 231, 235 n.4 (1st Cir. 1991).  Therefore, I will assume for

the purposes of this motion that Plaintiff suffered from a serious medical condition.

Regarding the subjective prong of the Eighth Amendment inquiry, medical mistreatment

rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an

act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious

harm.'" *Chance*, 143 F.3d, 698, 703 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care

provider was aware of facts from which the inference could be drawn that the inmate had a

serious medical need; and (2) the medical care provider actually drew that inference.  *Farmer*,

511 U.S. at 837; *Chance*, 143 F.3d at 702-703. The inmate then must establish that the provider

consciously and intentionally disregarded or ignored that serious medical need.  *Farmer*, 511

U.S. 825, 835; *Ross v. Giambruno*, 112 F.3d 505 (2d Cir. 1997). An "inadvertent failure to

provide adequate medical care" does not constitute "deliberate indifference."  *Estelle*, 429 U.S. at

105-06.  Moreover, a complaint that a physician has been negligent in diagnosing or treating a

medical condition does not state a valid claim . . . under the Eighth Amendment."  *Id.*  Stated

another way, "medical malpractice does not become a constitutional violation merely because the

victim is a prisoner." *Id.; Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("Because the

Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for

state tort law, not every lapse in prison medical care will rise to the level of a constitutional

violation.")  However, malpractice that amounts to culpable recklessness constitutes deliberate

13

indifference.  Accordingly, "a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan."  *Chance*, 143 F.3d at 703.

Defendants argue that Plaintiff has not alleged facts plausibly suggesting deliberate indifference because "[a]t best, [P]laintiff alleges that defendants Daugherty, Bean, Brennan, Thomas, and Gillani did not provide [P]laintiff with medications that he believes he needed." (Dkt. No. 47-1 at 8.)

It is true that "determinations of medical providers concerning the care and safety of patients are given a presumption of correctness."  *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).  However, the resolution of "[w]hether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case."[12]  *Chance*, 143 F.3d at 703.  This focus on the facts, among other things, distinguishes the three cases on which Defendants rely.  None of the cases was decided on a motion to dismiss: each was decided on a more developed record.  In *Blyden v. Mancusi*, 186 F.3d 252 (2d Cir. 1999), the case proceeded to trial and was decided on the facts developed in the course of the litigation.  Moreover, it was an excessive force case rather than a medical case and thus involved different determinations regarding the subjective

---

[12]     In *Chance*, for instance, the Second Circuit reversed the district court's 12(b)(6) dismissal where dentists allegedly recommended a course of treatment based on the fact that they would be paid more for it than they would be for a less invasive procedure.  The Second Circuit found that dismissal was inappropriate because plaintiff's "allegation of ulterior motives, if proven true, would show that the defendants had a culpable state of mind and that their choice of treatment was intentionally wrong and did not derive from sound medical judgment."  *Chance*, 143 F.3d at 704.

prong.[13]  In *Ross v. Kelly*, 784 F. Supp. 35 (W.D.N.Y. 1992), the case was decided after a bench

trial.  There, the prisoner wanted doctor to "precisely follow the directions" that he had received

from his private doctor before his incarceration.  *Id*. at 37.  The plaintiff received extensive care

and consultations and, at trial, the doctors testified about why they made decisions that they did.

Finally, *Harris v. Murray*, 761 F. Supp. 409 (E.D. Va. 1990) was decided on summary judgment

after the court considered an affidavit by a facility nurse.

Here, Plaintiff alleges that Defendants abruptly discontinued his psychiatric medications

and ignored his repeated complaints that he had a history of self-harm when not properly

medicated and that the changes were causing him to hear voices and grow increasingly

depressed.  (Dkt. No. 31 at 8-13.)  Plaintiff further alleges that Defendants' decisions regarding

his medication were based "on factors unrelated to prisoners['] medical needs[,] namely [the]

cost of medication and contracts related to procur[e]ment of medications . . ."  (Dkt. No. 31 at

21.)  These allegations, if proven true, could show that Defendants acted with deliberate

indifference.  It may be, of course, that Plaintiff cannot prove the allegations to be true.  Such

determinations, however, are appropriately made after the parties have had an opportunity to

conduct discovery.  Therefore, I recommend that the Court deny Defendants' motion to dismiss

the Eighth Amendment claims against Defendants Gillani, Thomas, Daugherty, Bean, and

Brennan.

### C.      QUALIFIED IMMUNITY

Defendants argue that they are entitled to qualified immunity regarding Plaintiff's Eighth

---

[13]      In prison excessive force cases, defendants must act "maliciously and sadistically"
to be found liable. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)

Amendment claim for damages.  (Dkt. No. 47-1 at 10-12.)

Generally, "the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted."  *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (quoting *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983)). The defense will only be successful at the motion to dismiss stage if the defense appears on the face of the complaint with all reasonable inferences drawn in the plaintiff's favor.  *Id*. at 436.

The qualified immunity inquiry in a prisoner civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff, establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted."  *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004) (citations omitted), accord, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007) (citations omitted).

Regarding the first issue, as discussed above, taking all of the facts alleged in the complaint to be true and drawing all inferences in Plaintiff's favor, the complaint states a claim that Defendants Gillani, Thomas, Daugherty, Bean, and Brennan violated Plaintiff's Eighth Amendment rights.  Regarding the second issue, the facts on the face of the complaint, if accepted as true, plausibly suggest that it would be clear to a reasonable officer in the position of Defendants Gillani, Thomas, Daugherty, Bean, and Brennan that his or her conduct was unlawful.  Therefore, I recommend that the Court deny Defendants' motion to dismiss on this ground.

## C.   ELEVENTH AMENDMENT

The first amended complaint (Dkt. No. 3) named the Office of Mental Health as a

16

defendant.  The operative complaint does not name the Office of Mental Health, but the OMH

still appears in the caption of this action as a defendant.  Defendants argue that Plaintiff's § 1983

claims for money damages against the OMH are barred by the Eleventh Amendment.  (Dkt. No.

47-1.)  To the extent that Plaintiff is asserting such a claim, Defendants are correct.

The Eleventh Amendment has long been construed as barring a citizen from bringing a

suit against his or her own state in federal court, under the fundamental principle of "sovereign

immunity."  *See* U.S. Const. amend XI ("The Judicial power of the United States shall not be

construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.");

*Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S.

261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). State

immunity extends not only to the states, but to state agencies and to state officers who act on

behalf of the state.  *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142-47

(1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-06 (1984).  Therefore, the

OMH is immune from Plaintiff's claim for money damages.  Therefore, I recommend that the

Court dismiss this claim.

The Eleventh Amendment bars suits for damages against state officials acting in their

official capacities.[14]  The operative complaint names Defendant Sawyer in both his official and

---

[14]     *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993) ("The
immunity to which a state's official may be entitled in a § 1983 action depends initially on the
capacity in which he is sued.  To the extent that a state official is sued for damages in his official
capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke
the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439,
1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under
Section 1983] for money damages against state officials in their official capacities."); *Farid v.*

individual capacities.  (Dkt. No. 31 at 5.)  Thus, I recommend that the Court *sua sponte* dismiss

any § 1983 claim for damages against Defendant Sawyer in his official capacity without leave to

amend.

### D.  ADA CLAIMS AGAINST INDIVIDUALS

Defendants argue that, to the extent that the operative complaint contains an ADA claim

against Defendants Gillani, Thomas, Waldron, Daugherty, Bean, Brennan, and Sawyer, the claim

should be dismissed.  (Dkt. No. 47-1 at 12.)  Defendants are correct.

The ADA does not provide for individual liability.  *Herzog v. McLane Northeast, Inc.*,

999 F. Supp. 274, 276 (N.D.N.Y. 1998) (Scullin, J.).  Therefore, I recommend that the Court

dismiss the ADA claims against Defendants Gillani, Thomas, Waldron, Daugherty, Bean,

Brennan, and Sawyer in their individual capacities without leave to amend.

### E.  ADA CLAIMS

Plaintiff claims that Defendants Gillani, Thomas, Waldron, Daugherty, Bean, Brennan,

and Sawyer "discriminated against [the] disabled [P]laintiff by denial of access to part of OHM's

mental health therapy and programs.  Defendants['] denial of medications from [P]laintiff who

---

*Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The eleventh amendment bars recovery against an
employee who is sued in his official capacity, but does not protect him from personal liability if
he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State
Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons.  But a suit against
a state official in his or her official capacity is not a suit against the official but rather is a suit
against the official's office. . . .  As such, it is no different from a suit against the State itself. . . .
We hold that neither a State nor its officials acting in their official capacities are 'persons' under §
1983."); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("As long as the government entity
receives notice and an opportunity to respond, an official-capacity suit is, in all respects other
than name, to be treated as a suit against the entity.  It is not a suit against the official personally,
for the real party in interest is the entity."); *see also Holloway v. Selsky*, 05-CV-0501, 2007 WL
433375, at *4 (N.D.N.Y. Feb. 6, 2007) (Sharpe, J.) (citing cases).

without reasonable modifications of rules[,] policies, practices, and services failed to make

reasonable accom[m]odations for the [P]laintiff's disabilities."  (Dkt. No. 31 at 23-24.)

Defendants argue that, to the extent that this language is an attempt to assert an ADA claim , it

should be dismissed.  (Dkt. No. 47-1 at 13-14.)  Defendants are correct.

Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131 *et seq*.

("ADA") applies to inmates in state prison.  *See Georgia v. Goodman*, 546 U.S. 151, 153-60

(2006) (reversing decision that paraplegic prisoner had not stated claim under Title II of the

ADA).  In order to state a claim of disability discrimination under Title II of the ADA, a plaintiff

must allege facts plausibly suggesting the existence of three elements: (1) he is a qualified

individual with a disability; (2) he was either excluded from participation in or denied the

benefits of a public entity's services, programs or activities or was otherwise discriminated

against by the public entity; and (3) such exclusion, denial or discrimination was by reason of his

disability.  *Goonewardena v. New York*, 475 F. Supp.2d 310, 324 (S.D.N.Y. 2007).

A prisoner may sue a public agency or an officer in his official capacity for violating the

ADA, but only if the conduct complained of also violates the Eighth Amendment.  *Degrafinreid*

*v. Ricks*, 417 F. Supp. 2d 403, 411-13 (S.D.N.Y. 2006).  Here, as discussed above, Plaintiff has

not named the OMH as a defendant and thus the complaint does not state an ADA claim against

the OMH.  Even if Plaintiff had named the OMH, the complaint fails to state an ADA claim

because it does not allege facts plausibly suggesting that he was "excluded from participation in

or denied the benefits of a public entity's services, programs or activities or was otherwise

discriminated against by the public entity" on the basis of his disability.  Further, the only

defendant named in his official capacity is Defendant Sawyer.  As discussed above, the operative

19

complaint does not state an Eighth Amendment claim against him because it does not sufficiently allege his personal involvement.  Therefore, I recommend that the Court dismiss any ADA claim with leave to amend.

## IV.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

As discussed above, Plaintiff has filed another motion for summary judgment despite repeated warnings from the Court that he should not do so until the completion of discovery. (Dkt. No. 58.)  Defendants move to strike the document.  (Dkt. No. 60.)  Plaintiff has asked permission to withdraw the motion.  (Dkt. No. 62.)  In light of these requests, the Clerk is directed to reclassify Plaintiff's motion for summary judgment (Dkt. No. 58) as Plaintiff's opposition to the motion to dismiss. The undersigned has considered Plaintiff's arguments in that document in drafting this Report-Recommendation and Order.

## V.    PLAINTIFF'S REQUEST FOR COUNSEL

Plaintiff requests the appointment of counsel.  (Dkt. Nos. 62-63.)

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party.  *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997).  Instead, a number of factors must be carefully considered by the court in ruling upon such a motion.  As a threshold matter, the court should ascertain whether the indigent's claims seem likely to be of substance.  If so, the court should then consider:

> The indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v.*

*Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)).  This is not to say that all, or indeed any, of

these factors are controlling in a particular case.[15]  Rather, each case must be decided on its own

facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing

*Hodge*, 802 F.2d at 61).

      A review of the file in this matter reveals that the issues in dispute herein are not overly

complex.  Further, it appears to the Court as though, to date, Plaintiff has been able to effectively

litigate this action.  While it is possible that there will be conflicting evidence implicating the

need for cross-examination at the time of the trial of this matter, as is the case in many actions

brought under 42 U.S.C. § 1983 by *pro se* litigants, "this factor alone is not determinative of a

motion for appointment of counsel." *Velasquez*, 899 F. Supp. at 974.  Finally, this Court is

unaware of any special reason why appointment of counsel at this time would be more likely to

lead to a just determination of this litigation.  In any event, <u>it is highly probable that this Court

will appoint trial counsel at the final pretrial conference</u> should this case survive the filing of any

further dispositive motions.

      The Court therefore finds that, based upon the existing record in this case, appointment of

counsel is unwarranted.  Plaintiff may only file another motion for appointment of counsel in the

event he can demonstrate that, in light of <u>specific</u> changed circumstances, consideration of the

above factors warrants the granting of such an application.

      **ACCORDINGLY**, it is

---

[15]  For example, a plaintiff's motion for counsel must always be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector, and such a motion may be denied solely on the failure of the plaintiff to provide such documentation. *See Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994); *Cooper v. Sargenti Co., Inc.*, 877 F.2d 170, 172, 174 (2d Cir. 1989).

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 47) be **GRANTED IN PART AND DENIED IN PART**.  It is recommended that (1) the Eighth Amendment claims against Defendants Waldron and Sawyer be dismissed with leave to amend; (2) Defendants Gillani, Thomas, Daugherty, Bean, and Brennan be directed to answer Plaintiff's Eighth Amendment claims; (3) any § 1983 claims for money damages against the OMH and Defendant Sawyer in his official capacity be dismissed without leave to amend; (4) any ADA claims against Defendants Gillani, Thomas, Waldron, Daugherty, Bean, Brennan, and Sawyer in their individual capacities be dismissed without leave to amend; and (5) any ADA claims against the OMH and Defendant Sawyer in his official capacity be dismissed with leave to amend; and it is further

**ORDERED** that the Clerk amend the caption to change the spelling of "Dr. Galani" to "Dr. Sohail Gillani"; and it is further;

**ORDERED** that Plaintiff identify and serve John Doe within sixty days of the date of any order adopting this Report-Recommendation; and it is further

**ORDERED** that Plaintiff's request to withdraw his motion for summary judgment (Dkt. No. 62) are and Defendants' request to strike Plaintiff's motion for summary judgment (Dkt. No. 60) are **GRANTED IN PART**.  The Clerk is directed to reclassify Plaintiff's motion for summary judgment (Dkt. No. 58) as Plaintiff's opposition to Defendants' motion to dismiss; and it is further

**ORDERED** that Plaintiff's request for the appointment of counsel (Dkt. No. 62) is **DENIED** without prejudice.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: February 9, 2012
       Syracuse, New York

George H. Lowe
United States Magistrate Judge